UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BILLY WAYNE RICHMOND,

    Plaintiff,

v.

PAT GLEBE, CAPTAIN CLINTON MAY, SERGEANT COLEMAN, KERRI McTARSNEY,

    Defendants.

CASE NO. C13-5795 RJB/KLS

ORDER TO SHOW CAUSE OR TO AMEND

Before the Court for review is Plaintiff Billy Wayne Richmond's proposed civil rights complaint. ECF No. 8. Mr. Richmond has been granted leave to proceed *in forma pauperis*. ECF No. 7. The Court has determined that it will not direct service of Mr. Richmond's complaint at this time because it is deficient. However, he will be given an opportunity to file an amended complaint.

## BACKGROUND

Mr. Richmond has filed what appear to be two civil rights complaints within one document. In the first section of his complaint, he purports to sue employees of the Stafford Creek Corrections Center (SCCC), where Mr. Richmond was previously housed, including SCCC's Superintendent Pat Glebe, Capt. Clinton May, SCCC Property Room Sergeant Coleman, and SCCC Grievance Coordinator Kerri McTarsney. ECF No. 8, p. 1. Mr. Richmond alleges that the SCCC property room is holding his personal property including law books and a

1  Zenith "color bubble type" television set.  ECF No. 8, p. 3.  Separately filed attachments reflect

2  that Mr. Richmond received a notice indicating that he had 90 days to pay $30.00 to have his

3  property mailed to him and if the amount is not paid within 90 days the property could be

4  donated or destroyed.  The attachment also reflects that Mr. Richmond filed a tort claim seeking

5  damages for the loss of personal property with the Washington State Office of Risk Management

6  on September 11, 2013.  *Id.*  Mr. Richmond seeks an order directing the return of his property.

7  *Id.*, p. 4.

8         In a separate section attached to his complaint, but also entitled as a civil rights

9  complaint, Mr. Richmond purports to sue the same parties.  However, it is not clear whether by

10 this filing he intended to pursue additional causes of action or to merely provide an explanatory

11 background for the claims raised in the first section of his complaint.  The narrative included in

12 this section is rambling, confusing, and hard to follow.  In the first three pages, Mr. Richmond

13 provides a history of his incarceration since 1996.  He also states generally here that up until

14 2011, all institutions where he had been housed had "complied with the Washington state

15 Constitution's laws and policies."  ECF No. 8, pp. 5-8.

16        Mr. Richmond then complains that he was discriminated against by unknown "Caucasian

17 women" when they refused to give him a job as a janitor because he is a Black man.  He also

18 alleges, however, that Captain Clint May, who is named as a defendant, spoke to the SCCC

19 kitchen food manager on his behalf and he was hired.  *Id.*, p. 8.

20        Mr. Richmond states that because of his "job inputs," "certain females committee sources

21 at SCCC" are retaliating against him.  He also claims that when he grieved a missing CD player,

22 Grievance Coordinator K. McTarsney infracted him for allegedly threatening her in his

23 grievances.  As a result, he spent thirty-three days in segregation.  *Id.*, p. 9.  It is unclear whether

24

ORDER TO SHOW CAUSE OR TO AMEND- 2

1  Mr. Richmond intended his allegation against Ms. McTarsney as part of his retaliation claim or
2  whether he is attempting to assert a separate claim relating to his disciplinary segregation.
3        At the end of this section of the proposed complaint, Mr. Richmond again raises his claim
4  that the SCCC property room will not ship his property without payment.  In the relief section of
5  this portion of his proposed complaint, Mr. Richmond seeks only the return of his personal
6  property.  *Id.*, p. 11.

## DISCUSSION

8        The Court declines to serve the complaint because it contains fatal deficiencies that, if not
9  addressed, might lead to a recommendation of dismissal of the entire action for failure to state a
10 claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(b)(ii), 1915A(b)(1).
11       Mr. Richmond's complaint is brought under § 1983.  To state a claim under § 1983,
12 a plaintiff must allege facts showing (1) the conduct about which he complains was committed
13 by a person acting under the color of state law; and (2) the conduct deprived him of a federal
14 constitutional or statutory right.  *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989).  In
15 addition, to state a valid § 1983 claim, a plaintiff must allege that he suffered a specific injury as
16 a result of the conduct of a particular defendant, and he must allege an affirmative link between
17 the injury and the conduct of that defendant.  *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

**A.   Personal Property**

19       Plaintiff claims that his personal property is being wrongfully withheld.  The Fourteenth
20 Amendment provides, "[n]o State shall ... deprive any person of life, liberty, or property, without
21 due process of law." U.S. CONST. amend. XIV, § 1.  The Constitution's due process guarantee
22 generally "requires some kind of hearing before the State deprives a person of liberty or
23 property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  However, when a prisoner alleges an
24 intentional or negligent deprivation of his property by an unauthorized action of a prison official,

there is no violation of procedural due process if the state provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 468 (1984) (intentional deprivations of property); *Parratt v. Taylor*, 451 U.S. 527, 537 (1981) (negligent deprivations of property). This is because "when deprivations of property are effected through random and unauthorized conduct of a state employee, pre-deprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur." *Hudson*, 468 U.S. at 533. On the other hand, when the deprivation occurs pursuant to "state law, regulation, or institutionalized practice, it is neither random nor unauthorized, but wholly predictable, authorized, and within the power of the state to control," and the justifications for post-deprivation remedies does not apply and the normal pre-deprivation hearing is required to satisfy due process. *Haygood v. Younger*, 769 F.2d 1350,1357 (9th Cir.1985) ( en banc ), *cert. denied*, 478 U.S. 1020 (1986) (*citing Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982)); *see also Zimmerman v. City of Oakland*, 255 F.3d 734, 737–38 (9th Cir.2001).

Under Washington law, Mr. Richmond may file a tort claim and a civil action against the state of Washington for the unlawful loss or destruction of his personal property. RCW 72.02.045 (state and/or state officials liable for the negligent or intentional loss of inmate property); RCW 4.92.090.-.100 (state liable for the tortious conduct of state officials and employees); *see also Jeffries v. Reed*, 631 F. Supp. 1212, 1216 (E.D. Wa. 1986) (state of Washington provides a meaningful remedy for the loss of an inmate's property by state officials). In fact, attachments subsequently filed by Mr. Richmond reflect that he has availed himself of state law remedies by filing a tort claim with the state. ECF No. 6. Because the state of Washington provides a meaningful remedy for the loss of his personal property, Mr. Richmond's claim that his federal due process rights have been violated must be dismissed.

### B. Racial Discrimination

Mr. Richmond also claims that he was discriminated against when he sought employment as a janitor at SCCC. However, he also claims that Captain May, who he names as a defendant, helped him to get a job in the SCCC kitchen.

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. *See San Antonio School District v. Rodriguez*, 411 U.S. 1 (1972). "To state a claim under 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir.2001) (*quoting Barren v. Harrington*, 152 F.3d 194, 1194 (9th Cir.1998)). Prisoners are protected from invidious discrimination based on race. *See Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

Mr. Richmond has failed to allege a claim of intentional or purposeful discrimination. He alleges only that the unnamed "female caucasians" who assigned jobs refused "to give a Black Man a job." ECF No. 8, p. 8. If Mr. Richmond wishes to pursue this claim, he must name the persons he claimed discriminated against him and allege the facts and circumstances surrounding the alleged discrimination. It is not sufficient to simply allege that he was denied something he desired because he is of one color and the person denying his request is of another color.

### C. Retaliation

Mr. Richmond also claims that "certain females committee sources at SCCC have been grudging and retaliating against him for [his] job inputs." ECF No. 8, p. 8. This vague allegation does not state a claim for retaliation.

1        "A prisoner suing prison officials under 1983 for retaliation must allege that he was
retaliated against for exercising his constitutional rights and that the retaliatory action does not
advance legitimate penological goals, such as preserving institutional order and discipline."
*Barnett v. Centoni*, 31 F.3d 813, 815–16 (9th Cir.1994) (per curiam) (*citing Rizzo v. Dawson*,
778 F.2d 527, 532 (9th Cir.1985)).  These claims must be evaluated in the light of the deference
that must be accorded to prison officials.  *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir.1995).
The prisoner must establish a link between the exercise of constitutional rights and the allegedly
retaliatory action. *Id.*  Finally, the prisoner must demonstrate that his first amendment rights were
actually chilled by the alleged retaliatory action.  *See Resnick v. Hayes*, 213 F.3d 443, 449 (9th
Cir.2000).

          Here, Mr. Richmond does not allege that he was engaged in a constitutional activity, does
not describe what was done in retaliation, does not name who retaliated against him, and does
not allege that his first amendment rights were actually chilled by the retaliatory action.

**D.     Segregation**

          To the extent Mr. Richmond is attempting to state a claim relating to his disciplinary
segregation, he is advised that in the context of prison disciplinary actions resulting in
administrative segregation, due process is only required when the segregation presents a type of
atypical, significant deprivation, in relation to the ordinary incidents of prison life. *Sandin v.
Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).  Facts to consider in
determining whether a prisoner's segregation is atypical and significant include: 1) whether the
challenged condition mirrored those conditions imposed upon inmates in administrative
segregation and protective custody and thus comported with the prison's discretionary authority;
2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's

action will invariably affect the duration of the prisoner's sentence. *Ramirez v. Galaza*, 334 F.3d 850, 860–861 (9th Cir.2003) (*quoting Sandin*, 515 U.S. at 486–87 and *Keenan*, 83 F.3d at 1089).

Mr. Richmond fails to allege how his placement in segregation imposed an "atypical and significant hardship" when compared to "the ordinary incidents of prison life." *Sandin* at 484.

Based on these allegations, Plaintiff has failed to state a viable claim under 42 U.S.C. § 1983. The Court will grant Plaintiff an opportunity to file an amended complaint so that he may attempt to cure his deficient complaint. Plaintiff must clarify whether he has any basis for pursuing a claim under § 1983. In the amended complaint, Plaintiff must write out short, plain statements telling the Court: (1) the constitutional right he believes was violated; (2) name of the person who violated the right; (3) exactly what that individual did or failed to do; (4) how the action or inaction of that person is connected to the violation of Plaintiff's constitutional rights; and (5) what specific injury Plaintiff suffered because of that person's conduct. See *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). If the person named as a defendant was a supervisory official, Plaintiff must either state that the defendant personally participated in the constitutional deprivation (and tell the Court the five things listed above), or Plaintiff must state, if he can do so in good faith, that the defendant was aware of the similar widespread abuses, but with deliberate indifference to Plaintiff's constitutional rights, failed to take action to prevent further harm to Plaintiff and also state facts to support this claim. *See Monell v. New York City Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

As noted above, Plaintiff may file an amended complaint to cure the deficiencies noted herein. Plaintiff shall present his complaint on the form provided by the Court. The amended complaint must be **legibly rewritten or retyped in its entirety**, it should be an original and not a copy, it should contain the same case number, and it may not incorporate any part of the original

complaint by reference. An amended complaint operates as a complete substitute for (rather than a mere supplement to) the present complaint. Plaintiff should complete all sections of the Court's form. Plaintiff may attach continuation pages as needed but may not attach a separate document that purports to be his amended complaint. The Court will screen the amended complaint to determine whether it contains factual allegations linking each defendant to the alleged violations of Plaintiff's rights. The Court will not authorize service of the amended complaint on any defendant who is not specifically linked to the violation of Plaintiff's rights.

If Plaintiff decides to file an amended civil rights complaint in this action, he is cautioned that if the amended complaint is not timely filed or if he fails to adequately address the issues raised herein on or before **October 31, 2013**, the Court will recommend dismissal of this action as frivolous pursuant to 28 U.S.C. § 1915 and the dismissal will count as a "strike" under 28 U.S.C. § 1915(g). Pursuant to 28 U.S.C. § 1915(g), enacted April 26, 1996, a prisoner who brings three or more civil actions or appeals which are dismissed on grounds they are legally frivolous, malicious, or fail to state a claim, will be precluded from bringing any other civil action or appeal in forma pauperis "unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

**The Clerk is directed to send Plaintiff the appropriate forms for filing a 42 U.S.C. 1983 civil rights complaint and for service. The Clerk is further directed to send a copy of this Order and a copy of the General Order to Plaintiff**.

**DATED** this 3rd day of October, 2013.

Karen L. Strombom
United States Magistrate Judge